UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| LEVI BREWER,<br><br>　　Plaintiff,<br><br>v.<br><br>NORFOLK SOUTHERN RAILWAY COMPANY and JAMES NEESMITH,<br><br>　　Defendant. | JURY TRIAL DEMANDED<br><br>CIVIL ACTION<br>FILE NO.: _____ |

## Complaint for Damages

Plaintiff, by and through his undersigned counsel files this Complaint for Damages as follows:

### Parties and Jurisdiction

1. Defendant Norfolk Southern Railway Company ("Norfolk Southern") is a Corporation registered in the State of Virginia.

2. Norfolk Southern is a citizen of Georgia.

3. Norfolk Southern's principal place of business is in Atlanta, Georgia.

4. The majority of Norfolk Southern's senior executives are primarily located in Georgia.

5. All or almost all of the train dispatching performed by Norfolk Southern happens in Georgia.

1

6. Norfolk Southern is subject to the jurisdiction of this Court with respect to the claims brought in this action.

7. Norfolk Southern may be served with process through its Registered Agent, J. Steven Stewart, in Bibb County, Georgia at 577 Mulberry St 1500, Macon, GA 31201, USA.

8. Norfolk Southern has been appropriately served with Summons and Complaint as allowed by law.

9. Norfolk Southern is a railroad carrier within the meaning of 49 U.S.C. § 20109 and § 20102, engaged in interstate commerce.

10 Norfolk Southern was a railroad carrier within the meaning of 49 U.S.C. § 20109 and § 20102, engaged in interstate commerce, at all times during July, August, and September 2020.

11. At all times relevant to this action Defendant Norfolk Southern was a common carrier by railroad engaged in the business of operating a railroad in interstate commerce for hire for the purpose of carrying freight in interstate commerce.

12. Defendant James Neesmith ("Neesmith") is a Georgia citizen.

13. Neesmith is subject to the jurisdiction of this Court with respect to the claims brought in this action.

14. Neesmith, at all times relevant to this case was an employee and/or officer of Defendant Norfolk Southern.

15. During July, August and September 2020, Neesmith was the Senior Road Manager, North End, Cedartown District.

16. Neesmith has been appropriately served with Summons and Complaint as allowed by law.

17. Venue is proper in this Court.

18. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1390, 1391, because this is the district in which a substantial part of the events giving rise to this claim occurred and because it is a district where Norfolk Southern resides.

19. Plaintiff Levi Brewer ("Brewer") is a citizen of the State of Georgia.

20. At all times relevant to this case, Brewer was an employee of Defendant Norfolk Southern.

21. At all times in July 2020, through his termination from Norfolk Southern pursuant to a letter dated September 30, 2020, Brewer was an employee of Defendant Norfolk Southern for purposes of 49 U.S.C. § 20109.

22. In the time period encompassing July 2020, Brewer was an employee of Defendant Norfolk Southern for purposes of 45 U.S.C. § 51.

### Statement of Subject Matter Jurisdiction

23. Jurisdiction in this Court for Plaintiff's claims under 49 U.S.C. § 20109 is proper under 49 U.S.C. § 20109(d)(3).

24. Jurisdiction in this Court for Plaintiff's claims under 45 U.S.C. § 51 is proper under 45 U.S.C. § 56.

25. Brewer commenced an action by filing a complaint with the United States Secretary of Labor within 180 days of the alleged violations of 49 U.S.C. § 20109 that form the basis of this Complaint.

26. That action was timely filed.

27. The Secretary of Labor has not issued a final decision within 210 days after the filing of Brewer's complaint and the delay is not due to any bad faith on the part of Brewer.

## STATEMENT OF FACTS/CLAIMS

28. On or about July 25, 2020, Norfolk Southern arranged for a van to transport a train crew from near Rome, Georgia to Chattanooga, Tennessee.

29. Norfolk Southern has, and had at the time, a contract with the van operator to provide van transportation to its crews.

30. For purposes of transporting the rail crew, the van and its driver were acting as agents of Norfolk Southern.

31. One of the van's tires was not in a safe or proper condition.

32. The condition of one of the van's tires resulted in a vibration in the ride in the van.

33. The van was not in a safe condition to transport passenger or be driven on a roadway.

34. The driver of the van was aware that the tire was not in a proper or safe condition to transport passengers.

4

35. Brewer was a member of the crew being transported in the van.

36. Brewer was being transported in a van pursuant to his job as a conductor for Norfolk Southern.

37. At the time immediately before he was transported in the van and during the time he was being transported in the van, Brewer was performing his duties as a conductor employed by Norfolk Southern and was acting within the scope of his employment with respect to duties that were related and necessary to and substantially affected the conduct of interstate commerce by Norfolk Southern.

38. Brewer was not given any warning concerning the condition of the van or the tire before he got into the van.

39. Brewer happened to sit in a seat over the unsafe tire.

40. As a result of being vibrated by the unsafe tire, Brewer began to feel back pain.

41. Brewer was injured on July 25, 2020 as a result of riding in the van.

42. Brewer was injured because Norfolk Southern used an unsafe van for his transportation.

43. It is reasonably foreseeable that a van with a bad tire could lead to injury.

44. Brewer asked the driver of the van to pull over.

45. The driver of the van pulled over.

46. The train crew notified Norfolk Southern of what had occurred and that the van had an unsafe tire.

47. Neesmith drove to the place where the van had pulled over.

48. Brewer told Neesmith that the vibration from the van was causing him discomfort.

49. Brewer told Neesmith that he could feel the vibration in his back.

50. Brewer told Neesmith his back was irritated.

51. Brewer told Neesmith his back was bothering him.

52. Brewer told others, such as the driver of the van, and Brewer's engineer, that his back was bothering him after riding in the van with the bad tire.

53. Neesmith drove Brewer and his engineer to Chattanooga, where they took rest and slept before working on a train that traveled back to Georgia.

54. On July 26, 2020, Brewer sent Neesmith a text message that said "Can you give me a call when you get a chance ... conductor Levi Brewer I worked the 370 yesterday."

55. 370 was the job number for Brewer and his Engineer on the day of the van ride with the bad tire.

56. Neesmith knew that the 370 job was the job with the bad tire.

57. Neesmith knew that the conductor on the job with the bad tire was the one who had told Neesmith that the vibration from the van was causing him

discomfort, that he could feel the vibration in his back, that his back was irritated and that his back was bothering him following the van ride.

58. Other than the van having a bad tire, that caused Brewer's back to hurt, there were no other incidents or issues with job 370 on July 25, 2020.

59. Neesmith did not call Brewer back.

60. Neesmith did not ask another supervisor at the railroad to respond to Brewer's call.

61. Neesmith did not send a text message to Brewer asking Brewer to contact another supervisor.

62. Neesmith considers himself required, 24/7, 365, to be subject to call, subject to answer and subject to anything regarding employees and the operation of Norfolk Southern.

63. Brewer texted Neesmith so he could tell him that his back was still hurting.

64. Because Brewer's back was hurting, he marked off work sick for a few days, waiting for Neesmith to call him back.

65. On or about August 3, 2020, Brewer was called in to go to work and he decided to see how it would go and presented for work.

66. Brewer was able to perform his work that day, but his back was hurting and it became clear to Brewer that he would not be able to continue working because of his back injury.

67. On August 3, 2020, while Brewer was working, a different supervisor, Brandon Hairston, approached Brewer to discuss Brewer having marked off sick.

68. Brewer told Hairston that he had marked off sick because his back had been hurt in the van incident.

69. Hairston had Brewer fill out an injury form and statement.

70. Brewer at all times was honest and forthright about how he was feeling and what happened.

71. Riding in the van with the unsafe tire caused Brewer to be injured and/or aggravated previous conditions and injuries and has resulted in pain that prevented Brewer from doing activities he otherwise would do.

72. Norfolk Southern sent Brewer a letter dated August 13, 2020, signed by Neesmith, that stated that it was holding a "formal hearing/investigation" and "The purpose of this hearing/investigation is to develop the facts and place your particular responsibility, if any, in connection with conduct unbecoming an employee when you provided false and/or conflicting statements to Brandon Hairston during a conversation on August 3, 2020 at approximately 5:30 p.m., regarding a matter which occurred on July 25, 2020 at approximately 1:30 p.m., in the vicinity of Ringgold, GA while you were serving as Conductor on Train 370G124. You are also being charged with late reporting of an injury on July 25, 2020 at approximately 1:30 p.m., in the vicinity of Ringgold, GA while you were serving as Conductor on Train 370G124."

73. Brewer did not provide false or conflicting statements to Brandon Hairston.

74. Brewer did notify Norfolk Southern of how his back was feeling when he told Neesmith that the vibration from the van was causing him discomfort; that he could feel the vibration in his back; that his back was irritate; and that his back was bothering him.

75. Brewer was injured on July 25, 2020.

76. Norfolk Southern employees, such as Brewer, do not have access to the injury report form known as Form-22.

77. Neesmith never asked Brewer to fill out a Form 22.

78. Neesmith never contacted Brewer in response to Brewer's text on July 26, 2020.

79. The first communication Neesmith had with Brewer following Brewer's July 26, 2020 text, was the letter from Neesmith informing Brewer of the disciplinary investigation.

80. On September 16, 2020, Norfolk Southern held what it refers to as an "investigation."

81. The investigation was held at a location within Inman Yard, which is located at 1550 Marietta Road Northwest in Atlanta, Georgia.

82. At the investigation, Neesmith said that on July 25, 2020, after Neesmith had traveled to the location of the van, "Mr. Brewer did make a

statement that he just returned from having a herniated disk and that the vibration, you know, from that was causing him discomfort."

83. At the investigation, Neesmith said that on July 25, 2020, after Neesmith had traveled to the location of the van, Brewer told him that his back was irritated and that it was bothering him.

84. At the investigation, Neesmith produced two statements that had been written by Brewer. Neesmith labeled these Exhibits 8A and 8B. In these statements, Brewer wrote "I told him [Neesmith] about my back issues and I got some Advil and rest in hopes to feel better before the return trip to Atlanta."

85. At the investigation, Neesmith said that "Mr. Brewer did not conduct himself in a professional manner when he spoke to Mr. Hairston and stated to Mr. Hairston that he notified me on July 25th of the injury that he filled out on looking at Carrier Exhibits #8A and B that this form that he filled out and stating that when Mr. Hairston asked had he notified a supervisor and he stated that he had notified me and he did not, so this rule applies to those reasons."

The rule to which Neesmith was referring was Norfolk Southern's Safety and General Conduct Rule 900.

86. Neesmith did not speak with Hairston.

87. Norfolk Southern sent Brewer a letter dated September 30, 2020 stating that he was terminated.

88. The letter from Norfolk Southern dated September 30, 2020 stated that the investigation had proven the charges of "conduct unbecoming an employee when you provided false and/or conflicting statements" and "late reporting of an injury."

89. Norfolk Southern terminated Brewer.

## Count One

90. Brewer repeats, realleges, and incorporates by reference, the allegations of the foregoing Paragraphs as if repeated herein.

91. As amended by the Implementing the Recommendations of the 9/11 Commission Act, effective August 3, 2007, Section 20109 of the Federal Rail Safety Act, 49 U.S.C. § 20109, was amended to provide that a railroad engaged in interstate commerce (such as Norfolk Southern) shall not, among other things, discipline or discriminate against an employee for reporting to a supervisor that he suffered a work-related injury. 49 U.S.C. §§ 20109.

92. Brewer engaged in protected conduct when he reported that he suffered an on-the-job injury to Neesmith and to Norfolk Southern. Neesmith and Norfolk Southern's conduct in retaliating against Brewer, by disciplining him for engaging in protected activity, violated Section 49 U.S.C. § 20109(a)(4).

93. Neesmith and Norfolk Southern knew that Brewer had reported an on the job injury.

94. Brewer suffered an unfavorable personnel action when he was charged with disciplinary charges by Neesmith and Norfolk Southern, when he was made to attend the investigation, and when he was terminated.

95. Neesmith and Norfolk Southern discriminated against and discharged Brewer, in whole or in part, as a result of his report of an on the job injury. Brewer's protected activity was a contributing factor in the adverse actions taken by Neesmith and Brewer.

96. At the times that Neesmith and Norfolk Southern took adverse actions against, discriminated against, and discharged Brewer, Neesmith and Norfolk Southern were aware that Brewer had properly reported an on the job injury.

97. The wrongful conduct of Norfolk Southern and/or its agents, and Neesmith, caused, in whole or part, Brewer to suffer injuries and damages, including loss of income and seniority, emotional pain, distress, humiliation, mental anguish and loss of reputation.

98. Brewer is entitled to all relief permitted under 49 U.S.C. § 20109 as is necessary to make him whole.

99. Brewer is entitled to damages from Neesmith and Norfolk Southern under 49 U.S.C. § 20109, including, without limitation, the complete expungement of all discipline related to the incident in suit, reinstatement and restoration of his seniority with his record unimpaired, back pay with interest, compensatory

damages including compensation for special and general damages sustained as a result of the incidents in suit, litigation costs, expert witness fees, reasonable attorneys' fees, and such equitable and non-equitable relief as is necessary to make him whole.

## Count Two

100. Brewer repeats, realleges, and incorporates by reference, the allegations of the foregoing Paragraphs as if repeated herein.

101. After Brewer reported a personal injury, Neesmith and Norfolk Southern knew that Brewer engaged in protected activity under Section 20109.

102. In response, Neesmith and Norfolk Southern acted with a reckless and/or callous disregard for Brewer's rights, acted with an indifference for Brewer's rights, acted with malice or ill will, intentionally violated federal law, and/or acted with a reckless disregard or callous indifference to the risk that their actions violated federal law.

103. Neesmith and Norfolk Southern have a history and an ongoing pattern and practice of violating 49 U.S.C. § 20109.

104. Neesmith and Norfolk Southern should be punished and deterred for this ongoing disregard of the rights of Brewer and other employees.

105. Neesmith and Norfolk Southern should each be subjected to a punitive damages award in an amount up to $250,000 each.

### Count Three

106. Brewer repeats, realleges, and incorporates by reference, the allegations of the foregoing Paragraphs as if repeated herein.

107. Norfolk Southern is liable to Brewer under the Federal Employers Liability Act, 45 U.S.C. § 51, *et seq.*, for reasons including, without limitation:

a.) Norfolk Southern failed to provide Brewer with a reasonably safe place to work;

b.) Norfolk Southern failed to provide Brewer with safe and properly maintained equipment to transport Brewer in the furtherance of his duties;

c.) Norfolk Southern failed to provide Brewer with safe and appropriate transportation;

d.) Norfolk Southern provided Brewer with transportation in a van that did not have a properly trained driver;

e.) Norfolk Southern provided Brewer with transportation in a van that was not safe and/or properly maintained;

f.) Norfolk Southern provided Brewer with transportation in a van with a driver who carelessly continued to drive with a bad tire; and/or

g.) Norfolk Southern's employees and/or agents were negligent.

108. As a result, in whole or in part, of Norfolk Southern's negligence, failure to provide Plaintiff with a safe place to work, and negligence in providing Brewer with an unsafe van ride, as set forth above and as will be proven at trial,

Brewer was caused to be injured. Brewer suffered severe and permanent bodily injury including, without limitation, pain, suffering and discomfort, lost wages, both past and future, and incurred medical expenses. Brewer has suffered general damages including but not limited to physical and mental pain and suffering and the loss of his capacity to work.

109. Pursuant to 45 U.S.C. § 51, Norfolk Southern is liable to Brewer for an award of special damages for past and future unpaid medical expenses in an amount to be shown at trial, lost wages and benefits, both past and future, in an amount to be shown at trial, and general damages in an amount to be determined by a jury of Brewer's peers.

WHEREFORE, Plaintiff Levi Brewer prays FOR A TRIAL BY JURY, that summons issue, that this Court enter judgment in favor of Plaintiff and against Defendant Neesmith and Defendant Norfolk Southern, and that the following relief be granted:

(a) Under Count One, that Plaintiff be awarded special damages in an amount to be proven at trial, general damages in an amount to be determined by the fact finder, attorney's fees and expenses of litigation, and all equitable relief allowed under the law, including but not limited to the expungement of discipline, reinstatement with seniority unimpaired, front pay and any other necessary relief;

(b) Under Count Two, that Neesmith and Norfolk Southern each be ordered to pay punitive damages to Plaintiff in an amount sufficient to punish and deter; and

(c) Under Count Three, that Plaintiff be awarded his special and general damages in an amount to be show at trial and determined by the jury;

(d) That the cost of this action be cast upon Defendants;

(e) That Plaintiff be awarded such other and further relief as allowed by law and as the Court deems just and proper.

**WARSHAUER LAW GROUP, P.C.**

*/s/ Trent Shuping*
Trent Shuping
Georgia Bar No.: 159083
Michael J. Warshauer
Georgia Bar No.: 018720

2740 Bert Adams Road
Atlanta, Georgia 30339
T: 404.892.4900
F: 404.892.1020
tss@warlawgroup.com
mjw@warlawgroup.com
*Attorneys for Plaintiff*