# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **LEVI BREWER,** | |
| Plaintiff, | **CIVIL ACTION** |
| | **FILE NO. 4:21-cv-00241-MLB** |
| **v.** | |
| **NORFOLK SOUTHERN RAILWAY COMPANY and JAMES NEESMITH,** | |
| Defendants. | |

## Plaintiff's Responses to
## Defendants' Motions in Limine

Plaintiff responds as follows to the Defendants' Motions in Limine [Doc. 99]. For ease of reference, Plaintiff has identified each motion by the letter and title used by the Defendants.

- **Defendants' MIL A:    Plaintiff may not challenge the collectively-bargained disciplinary process that resulted in his dismissal.**

## 1.    This case does not involve the Railway Labor Act.

As a threshold matter, Plaintiff is not challenging his termination under the Railway Labor Act or seeking to enforce any provisions of his collective bargaining agreement. Instead, he brings this case under the anti-retaliation provisions of the Federal Railroad Safety Act found at 49 U.S.C.

1

§ 20109. As the Third Circuit explained, Congress has expressly removed these protections and their enforcement from the procedures of the Railway Labor Act:

> In 2007, Congress amended FRSA again, untangling its retaliation-dispute-resolution scheme from the Railway Labor Act and giving it to the Secretary of Labor, subject to expanded judicial oversight. See Implementing Recommendations of the 9/11 Commission Act of 2007, Pub. L. No. 110-53, § 1521, 121 Stat. 266 (2007). The point of this was to "expand the protections for railroad employees" and to "enhance employees' administrative and civil remedies." *Perez*, 778 F.3d at 510 (internal quotation marks and citation omitted).

*Guerra v. CONRAIL*, 936 F.3d 124, 128 (3d Cir. 2019)(some citation omitted).

Recently, Judge Thrasher, in an FRSA case, informed Norfolk Southern that the dispute resolution procedures of the Railway Labor Act are not relevant in a case seeking damages under the FRSA:

> Finally, the Defendants argue that the Railway Labor Act ("RLA") preempts any grievances that Singleton may have with the process for abolishing and re-bulletining the wheel truck position. According to the Defendants, that process is dictated by the collective bargaining agreement between Norfolk Southern and Singleton's union, and federal courts do not have original jurisdiction to hear claims for alleged violations of a collective bargaining agreement. But as set forth in the Complaint, Singleton's retaliation claim does not seek to interpret or enforce any provision in his collective bargaining agreement. The Court thus

concludes that the RLA and its dispute resolution procedures are irrelevant to this case.

*Singleton v. Norfolk S. Ry. Co.*, No. 1:19-CV-3133-TWT, 2023 U.S. Dist. LEXIS 18071, at *23-24 (N.D. Ga. Feb. 3, 2023)(citation to record omitted).

**2.    Nothing in the RLA limits the evidence that may be considered in an FRSA case.**

Turning to the Defendants' motion, they fail to cite to any specific provision or text in the Railway Labor Act that prohibits evidence in an FRSA case. *See* Defendants' Motion, p.3 (broadly citing 45 U.S.C. § 151 *et. seq*). There is none. And as noted, Plaintiff does not allege that the collective bargaining agreement was not complied with. He alleges that the FRSA was violated.

**3.    The jury will be properly charged as to the FRSA, making evidence of how the Defendants went about terminating the Plaintiff relevant.**

The jury will be properly charged on the elements of Plaintiff's FRSA claim. As one Court in this Circuit recently explained:

> District courts in the Eleventh Circuit analyze FRSA retaliation claims under the four-element test established by the Third Circuit in *Araujo v. New Jersey Transit Rail Operations, Inc.*, 708 F.3d 152 (3d Cir. 2013). *See Shearrer v. Norfolk S. Ry. Co.*, 2021 U.S. Dist. LEXIS 43389, 2021 WL 871356, at *4 (N.D. Ala. Mar. 9, 2021) (collecting cases).

To establish a prima facie case of FRSA retaliation under this standard, a plaintiff must show:

(1) he engaged in protected activity,

(2) the employer knew he engaged in said activity,

(3) the employee suffered an adverse employment action, and

(4) the protected activity was a contributing factor in the adverse action.

*Araujo*, 708 F.3d at 157. If the plaintiff makes this showing, "the burden shifts to the employer to show by clear and convincing evidence that it would have taken the same unfavorable personnel action in the absence of the protected activity." *Murray v. UBS Sec., LLC*, 601 U.S. 23, 144 S. Ct. 445, 449, 217 L. Ed. 2d 343 (2024) (internal quotation marks omitted) (quoting 49 U.S.C. § 42121(b)(2)(B)(ii)). "The framework was meant to relieve whistleblowing employees of the excessively heavy burden under then-existing law of showing that their protected activity was a significant, motivating, substantial, or predominant factor in the adverse personnel action." *Id.* at 450 (internal quotation marks and citation omitted).

Protected activity is a contributing factor in an adverse action if it, "alone or in combination with other factors, tends to affect in any way the outcome of the decision." *Araujo*, 708 F.3d at 158 (internal quotation marks omitted) "The protected activity need only play some role, and even an 'insignificant' or 'insubstantial' role suffices." *Palmer v. Canadian Nat'l Ry./Ill. Cent. R.R. Co.*, ARB Case No. 16-035, 2016 DOL Ad. Rev. Bd. LEXIS 60, 2016 WL 5868560, at *31 (Sept. 30, 2016).

Until recently, circuits were split as to whether a plaintiff must present evidence of retaliatory intent or animus to prevail under the contributing factor standard. The Supreme Court resolved this circuit split in *Murray v. UBS Securities, LLC*. In short, the Court held that a plaintiff need not prove his employer's retaliatory intent or animus. 144 S. Ct. at 454. "Showing that an employer acted with retaliatory animus is one way of proving that the protected activity was a contributing factor in the adverse employment action, but it is not the only way." Id. at 455. As the Court explained, "the incorporation of the contributing-factor standard . . . reflects a judgment that personnel actions against employees should quite simply not be based on protected whistleblowing activities—not even a little bit." *Id.*

Ultimately, Plaintiff "bears the burden to prove that his protected activity 'was a contributing factor in the unfavorable personnel action alleged in the complaint,' 49 U.S.C. § 42121(b)(2)(B)(i), but he is not required to make some further showing that his employer acted with 'retaliatory intent.'" *Id.* at 456.

Plaintiff may prove that his protected activity was a contributing factor by circumstantial evidence, including:

[1] temporal proximity,

**[2] indications of pretext,**

**[3] inconsistent application of an employer's policies,**

[4] an employer's shifting explanations for its actions,

[5] antagonism or hostility toward a complainant's

5

protected activity,

**[6] the falsity of an employer's explanation for the adverse action taken, and**

**[7] a change in the employer's attitude toward [the plaintiff] after he or she engages in protected activity.**

*Sirois v. Long Island R.R.,* 797 F. App'x 56, 59-60 (2d Cir. 2020) (citations omitted).

*Highsmith v. CSX Transp., Inc.*, 2024 U.S. Dist. LEXIS 114983, at *9 (S.D. Ga. June 24, 2024)(some citation omitted and some formatting altered)(emphasis added).

In light of these standards, we see that, with respect to rules 401-403, the way in which the Defendants went about applying the disciplinary process in this case is relevant to whether or not they were retaliating against the Plaintiff and whether or not they can meet the burden of showing they would have taken the same actions regardless of Plaintiff's protected activity. *See e.g. Brewer v. BNSF Ry. Co.*, 2015 U.S. Dist. LEXIS 195235, *10 (D. Mont. Nov. 20, 2015)("If Brewer's alleged rule violations were not investigated in conformity with BNSF's training and instructions, this may be circumstantial evidence tending to prove that his claimed protected activity was a contributing factor in his termination.").

In *Crivilare v. Union Pac. R.R. Co.*, 2024 U.S. Dist. LEXIS 54245, *22-23 (S.D. Ill. Mar. 26, 2024), the Court considered the conduct of the railroad's supervisor, a man named James, in applying the discipline process:

> Defendant James also chose not to call Mr. Garfield and Mr. Strubinger, the two individuals working with Plaintiff at the time of the trip and fall, to testify at the hearing. Defendant James made that decision despite Plaintiff's request for their testimony. Even if Defendant James provided notice to Plaintiff that those witnesses would not be called at the hearing, meaning Plaintiff had to call the witnesses himself, it is striking for purposes of the fourth element of the prima facie case under § 20109(a)(4) that Defendants would take the self-serving position that those witnesses, whose absence would hinder Defendant Union Pacific's operations, had nothing relevant to add to the hearing. Again, Mr. Garfield and Mr. Strubinger were with Plaintiff at the time of the incident, and, obviously, they had traversed the property under the same conditions as Plaintiff.

*Crivilare v. Union Pac. R.R. Co.*, 2024 U.S. Dist. LEXIS 54245, *22-23 (S.D. Ill. Mar. 26, 2024).

Similarly, in *Bostek v. Norfolk S. Ry. Co.*, 2019 U.S. Dist. LEXIS 110623, *18-20 (N.D. Ohio July 2, 2019), the court looked at the conduct of Norfolk Southern's supervisor, named Myrick, in pursuing discipline as relevant:

> [T]hough Myrick claimed NSR wanted Smith "to come to [the false and conflicting statements] disciplinary hearing and she would not[,]", Smith

testified that she had expressed her willingness to give a statement at the hearing but was never asked to do so.

Rather than presenting Smith's written statement or her personal testimony, Myrick testified that Smith told him Bostek "sat on the steps, was her exact words." But in Smith's three personal accounts presented as evidence here . . . Smith never used these words, but instead described Bostek's "fall."

Beyond suppression of evidence, there is evidence that Myrick acted questionably throughout the investigation into Bostek's on-duty injury. First, from the beginning, Myrick classified the incident as a "slip no fall," even though Smith reported Bostek had slipped and landed on her bottom.

. . .

Acting on his personal beliefs, Myrick brought charges against Bostek for making false and conflicting statements when reporting her injury. Though Bostek's union representative asked Myrick multiple times to specify the allegedly false and conflicting statements that formed the basis of this charge, he did not provide these details prior to the hearing. As a result, Bostek was unable to adequately prepare for the hearing.

Ultimately, because Myrick withheld evidence from both the hearing officer and Bostek herself, the false and conflicting statements hearing was, in Myrick's words, a "he said she said" situation. Because there is evidence to suggest Myrick's hostility stemmed directly from the injury report, and his conduct impacted the investigation resulting in Bostek's dismissal, a jury could reasonably conclude the

injury report was a "contributing factor" of NSR's decision to terminate Bostek.

*Bostek v. Norfolk S. Ry. Co.*, 2019 U.S. Dist. LEXIS 110623, *17-20 (N.D. Ohio July 2, 2019). *See also, Head v. Norfolk S. Ry.*,, 2017 U.S. Dist. LEXIS 147896, *49 (N.D. Ala. Sep. 12, 2017)("McLain arranged for Krull to serve as the hearing officer for the disciplinary investigation. In his email to Krull, McLain described Plaintiff as 'easily the worst guy we have when it comes to attitudes.' Then, at the disciplinary hearing, McLain read Plaintiff's complaint about the Kubota ATV into the record and criticized Plaintiff for including such a complaint in an official Norfolk Southern document."); *Smith v. Bombardier Transp. Servs. USA Corp.*, 2020 U.S. Dist. LEXIS 262202, *6-7 (D. Md. Jan. 21, 2020)("As described above, Smith alleges facts such as procedural irregularities, including the late-filed charges and the unexplained postponement of the investigatory hearing . . . Those allegations suffice, when taken in the light most favorable to Smith, to suggest that his reporting of his work-related injuries and his compliance with his doctors' orders contributed to Bombardier's decision to terminate him."); *Fresquez v. BNSF Ry. Co.*, 52 F.4th 1280, 1310 (10th Cir. 2022)("The jury could also have reasonably found that Carpenter and Paz knowingly took steps to limit what evidence was presented at the disciplinary hearing,

and that Paz actually lied at the hearing when he testified about what happened on May 5, 2016.") *Lemieux v. Soo Line R.R.* Co., 2018 U.S. Dist. LEXIS 207527, *31 (D. Minn. Oct. 15, 2018)("Lemieux argues that CP failed to conduct fair and impartial hearings, which suggests pretext or animus. Lemieux points to several factors that suggest pretext: (1) personnel in both hearings refused to consider evidence from eyewitnesses; (2) the manager presiding over the second hearing testified against Lemieux in the first hearing; and (3) in the second hearing, the only third-party witness to testify was Jared, who had been involved in recommending Lemieux's discipline after the first hearing. These factors — especially viewed in combination — create a reasonable inference of pretext.)

Here, whether Norfolk Southern followed its own policies and normal procedures is also relevant to whether Norfolk Southern can show it would have taken the same actions regardless of the Plaintiff's protected activity. In deciding this, the jury will consider many factors. A common recitation of these factors provides that:

> The following non-exclusive factors are relevant to this inquiry:
>
> (1)    whether    the    employer    has written policies addressing the alleged misconduct;

**(2) whether the employer followed applicable investigatory and disciplinary procedures**;

(3) the temporal proximity between the non-protected conduct and the adverse actions;

(4) whether the employer consistently enforces the policies and rules at issue; and

(5) the independent significance of the non-protected activity.

*See Dafoe v. BNSF Ry. Co.*, 164 F. Supp. 3d 1101, 1115-16 (D. Minn. 2016).

*Singleton v. Norfolk S. Ry. Co.*, No. 1:19-CV-3133-TWT, 2023 U.S. Dist. LEXIS 18071, *36 (N.D. Ga. Feb. 3, 2023)(emphasis added). *See also*, *Williams v. Ill. Cent. R.R.*, No. 3:16-cv-838-CWR-FKB, 2018 U.S. Dist. LEXIS 18106, *15-16 (S.D. Miss. Feb. 5, 2018)(same); *Epple v. BNSF Ry. Co.*, Civil Action No. 3:16-CV-1505-C, 2018 U.S. Dist. LEXIS 233742, *8-9 (N.D. Tex. Feb. 9, 2018)(same) *Sanders v. BNSF Ry. Co.*, No. 17-cv-5106 (ECT/JFD), 2022 U.S. Dist. LEXIS 218148, *12-13 (D. Minn. Dec. 5, 2022)(same); *Thomas v. Union Pac. R.R. Co.*, 203 F. Supp. 3d 1111, 1126 (D. Or. 2016)(same).

In its concluding paragraph, the Defendants cite Rule 403, but offer no specific explanation as to why the evidence of how it conducted the

11

process of terminating Plaintiff creates unfair prejudice, confuses the issues, or misleads the jury.

**4.    Defendants offer no authority for the exclusion of the way it conducted its disciplinary process.**

Outside of generic citation to cases about the RLA, the only authority cited by Defendants is one sentence in *BNSF Railway Company v. United States Department of Labor*, 867 F.3d 942, 947 (8th Cir. 2017). This sentence says "But the [Administrative Law Judge] in an FRSA retaliation proceeding has no authority to punish BNSF for conducting disciplinary proceedings in accordance with the governing collective bargaining agreement and Railway Labor Act procedures that the ALJ considers unfair."

In context, we see that this sentence was not referring to an evidentiary issue in a jury trial, but came during the Circuit Court's review of the ALJ's findings of fact. *See id.* at 946-947 (rejecting the ALJ's "chain-of-events causation theory" before turning to consider the alternative grounds for the ALJ's ruling)("If sound, we uphold the agency's reliance on a factually supported alternative ground. But here, we conclude that these

"findings" are either non-existent or insufficient to support the ARB's contributing factor and affirmative defense rulings.")[1]

Reading the *BNSF* case shows that it provides no support for the proposition that evidence of how a railroad goes about punishing an employee is irrelevant or inadmissible. Rather, we see that, based upon the record in *that* case, the Circuit Court found that BNSF's decision not to provide a continuance to the employee was insufficient evidence of pretext. *Id.* at 947.

## 5.    The record shows that the "Discipline and Investigations Manual" sets forth the policy Norfolk Southern claims to follow.

The Defendants' brief, in its description of its Discipline and Investigations Manual ignores the record evidence in this case. The Norfolk Southern supervisor who oversaw the discipline proceeding against Plaintiff and terminated him testified as follows:

_____

[1] By way of background, if a plaintiff in an FRSA case does not "kick out" their case a federal district court as Plaintiff did here, the legal and factual issues are tried to an administrative law judge. This decision can be appealed to an administrative law board and then appealed to a Circuit Court. *See id.* at 944-945.

Q. ·Were you provided with the investigation and
discipline policy manual at Norfolk Southern?

A.Yes.

Q.And -- and have you reviewed that?

A. I -- yeah, I've utilized it as part of conducting
hearings.

Q. Do you comply with that when you conduct
hearings?

A. Yes.

Q. Did you comply with that in this case?

A. Yes.

Q. And do you believe that it's important for you, as a
hearing officer, to make sure that you comply with
Norfolk Southern's investigation discipline policy
manual when you're serving as a hearing officer?

A. Yes.

Sandoval Dep. Internal page 67, line 17 through internal page 68, line 7, pp.

68 and 69 of Doc. 71 on ECF.

Thus, contrary to being an obscure summary of collective bargaining

agreements, the manual sets forth policies the relevant supervisor in this

case claims he follows, did follow, and are "important" for him to comply

with. Of course, it is for the jury to decide if Norfolk Southern complied

with its normal policies and what weight to give them. For example, if Mr. Sandoval wishes to explain why he deviated from the Manual, a jury may consider his explanation.

**7.    Evidence of Defendants' dishonesty in terminating the Plaintiff is relevant.**

The Defendants argue that Plaintiff should be prohibited from presenting evidence that Norfolk Southern's supervisors were dishonest at the proceeding held to terminate the Plaintiff.

As is evident from common sense, the standards applicable to this case, and the multiple authorities cited above, the dishonesty of the supervisors in their efforts to discipline the Plaintiff are relevant evidence. Again, the Defendants are free to argue that this dishonesty was not related to Plaintiff's report of an on the job injury or that it is their common practice and policy to be dishonest regardless of whether an employee has engaged in protected activity. But the fact that their dishonesty occurred in the context of the railroad's discipline proceeding does not somehow make it inadmissible evidence.

The Defendants first motion in limine must be denied.

- **Defendants' MIL B.    Plaintiff should be precluded from offering evidence of other employees, individually or collectively, allegedly retaliated against by Defendants.**

**1.    The Defendants point to no specific evidence to which its motion applies.**

Outside of referring to printed lists of complaints filed (which Plaintiff does not intend to introduce), the Defendants do not point to any specific evidence they seek to exclude.

**2.    Plaintiff is not making a "pattern and practice" claim.**

As the Defendants note, the FRSA does not provide for "pattern and practice" claim such as can exist under Section 707 of Title VII. Indeed, it will be important for this Court to remember that this is not a Title VII claim and any authority from Title VII cases, which have a different statutory basis and different standards, should be viewed warily.

But the fact that Plaintiff is not making a "pattern and practice" claim does not mean that the Defendants' treatment of other employees is categorically irrelevant or inadmissible. Indeed, Defendants cite an ALJ order in a case styled *Jensen v. Union Pacific* for the proposition that no "pattern and practice" claim exists under the FRSA. But as at least one other district court has pointed out, the *Jensen* order makes clear that the lack of a

pattern and practice claim is not a limitation on relevant evidence. The ALJ in *Jensen*, in stating there was no pattern and practice claim, made sure to drop a footnote to emphasize this point:

> I do not imply that the evidence at trial necessarily will be completely confined to incidents in which Complainant was personally involved. If the same decision-makers who terminated Complainant's employment repeatedly disciplined other subordinates who engaged in activity protected under the Act, that could be relevant to show that Complainant's safety-related activity occasioned similar retaliation. But, to be relevant for this purpose, it must have some link to the discipline imposed on Complainant (e.g., same managers or same foreman). Evidence of widespread retaliation also could support Complainant's claim for punitive damages: It could show the Railroad's conscious disregard of workers' federal statutory rights. But, again, a few anecdotes are unlikely to show a national practice.

*Jensen v. Union Pacific R.R. Co.*, 2011-FRS-00005, fn. 1 at p. 11 (Aug. 19, 2011)(attached here as Ex. 1.) *See also Frost v. BNSF Ry. Co.*, 218 F. Supp. 3d 1122, 1133 (D. Mont. 2016) (pointing out that the *Jensen* order does not exclude evidence).

Again, without knowing what specific evidence Defendants seek to exclude, it is somewhat hard to respond to each of the Defendants' arguments. For example, Defendants claim that *any* evidence of other incidents runs afoul of Rule 404(b). However, this is not true, Rule 404(b)

provides that evidence of other prior actions are relevant in certain situations. *See e.g. Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1286 (11th Cir. 2008); *Green v. US Steel Corp.*, 550 F. App'x 773, 777 (11th Cir. 2013).

Moreover, as noted above, evidence that the Defendants act with reckless disregard to employee's rights under the FRSA are relevant to punitive damages.

And finally, we have no way of knowing in what ways the Defendants may open the door to such evidence, such as by attempting to introduce evidence of the way they handle discipline in other cases.

In the end, without knowing what evidence is at issue, this Court is not in a position to make a ruling on Defendants' second motion in limine and Plaintiff requests that the motion either be denied or taken under consideration and ruled upon at trial.

- **Defendants' MIL C: Plaintiff's personal injury claim has resolved and he should not be allowed to prejudice the jury with evidence and argument accusing Norfolk Southern of causing his injury.**

The facts of how Plaintiff was injured and the facts surrounding his injury are relevant to his subsequent report, in good faith, of an on the job injury. This case does not arise in a vacuum. Indeed, in this Court's order on Defendants' motion for summary judgment, it provided a description of the

background events. *See* Doc. 87, p.1. This was necessary to provide context and explain the facts of what happened.

At trial, a party is allowed to tell its story. *See e.g. Parr v. United States,* 255 F.2d 86, 88 (5th Cir. 1958)(finding no error where trial court allowed prosecutors to show jury a lewd and obscene film, even though the defendant offered to stipulate that the film was lewd and obscene)("The reason for the rule is to permit a party to present to the jury a picture of the events relied upon.")

Here, the cause of Plaintiff's injury is relevant to his good faith report of an on the job injury. The jury is allowed to know how he was injured. And the cause of his injury and his report of the injury are of course intertwined. For example, Defendant NeeSmith, when asked "Did Mr. Brewer report any discomfort in his back to you?" answered "He stated that he – due to the vibration of the tire, he – felt discomfort, and – to his back." NeeSmith Dep. internal p. 11, lines19-22, p. 12 of 46 of Doc. 80-4 in ECF.

The fact that Plaintiff reported discomfort related to a specific issue with the van is of course probative of the Plaintiff's good faith report of an injury. It is also probative of Defendants' receipt of his report of an on the job injury. The Court will remember that the Defendants argue that when

the Plaintiff told his supervisor he was feeling discomfort in his back as a result of the tire and wanted to take Advil or Tylenol, he did not report an injury and was in fact concealing an injury.

The jury cannot instead simply be told that Plaintiff randomly reported back pain of unknown origin after riding in a van.

Similarly, it is relevant that Plaintiff notified the Defendant not only of his injury but of the cause, providing the Defendant with every opportunity to investigate the occurrence had it chosen to do so.

The Defendants argue that any information about the cause of Plaintiff's injury or the bad tire should be inadmissible per Rule 403. But the reality is, we are talking about a bad tire, a bumpy van ride, and a back injury. The bad tire may have been inflammatory to the back, but there is no reason to believe it will be particularly inflammatory to the jury. And certainly not in any way which would call Rule 403 into play. *Luxottica Grp., S.p.A. v. Airport Mini Mall, Ltd. Liab. Co.,* 932 F.3d 1303, 1318 (11th Cir. 2019)("Excluding evidence as unduly prejudicial under Federal Rule of Evidence 403 is an extraordinary remedy [that] should be used sparingly," and, in applying the rule, "courts must look at the evidence in a light most favorable to admission.") (internal quotation and citation omitted).

The Defendants argue that the jury may be confused and award personal injury damages. This seems unlikely given that the jury will be properly charged on the damages it can award under the FRSA.

This Court retains the ability to control the presentation of evidence under Rule 611. Frankly, the Plaintiff has little incentive to overly focus on his injury. It is not the injury that ended his twelve-year railroad career — it was the Defendants' retaliation against him after he reported it. Nevertheless, to the extent that the Court feels any evidence relating to the van, its tire, or the injury is becoming cumulative or that counsel's presentation is not appropriate, it can certainly take appropriate action at trial. But the Defendant cannot simply exclude the facts of this case with a blanket motion in limine.

- **Defendants' MIL D: The Court should preclude Plaintiff from offering other evidence or argument that is irrelevant or would serve solely to prejudice the jury.**

This motion is rather vaguely titled. Plaintiff has no intention of offering irrelevant evidence. Neither party should.

With respect to the specific issues raised in the body of the motion:

   o Plaintiff does not intend to introduce the legislative history of the

      FRSA to the jury.

o The emotional distress of others is not a category of damages Plaintiff is seeking and Plaintiff does not intend to introduce any evidence *solely* related to the emotional distress of others. However, the emotional distress of others may be relevant to the Plaintiff's emotional distress. Counsel, under the supervision of the Court, can carefully approach such evidence at trial to make sure that questions are framed in such a way as to elicit relevant evidence.

o Plaintiff agrees that, generally speaking, the financial positions of the parties are not relevant. This applies both ways. Thus, an examination of the Plaintiff's wife's earnings or of how the Brewer's spend their money is irrelevant (i.e. no financial planning by way of cross examination). However, the Plaintiff is asserting a claim for punitive damages. As a court in this Division has explained:

> "Generally speaking, the financial position of a defendant is relevant . . . in federal causes of action 'where the complaint alleges facts demonstrating the possibility that punitive damages will be at issue.'" *Wilson v. Gillis Advertising Co.*, 145 F.R.D. 578, 580 (N.D. Ala. 1993) (citing *Federal Procedure* § 26:58 (1988)); *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 270 (1981) ("[E]vidence of a tortfeasor's wealth is

traditionally admissible as a measure of the amount of punitive damages that should be awarded."). It is well-settled that a "defendant's net worth [can be] an important factor for the jury to consider in determining an amount of punitive damages." *Woods-Drake v. Lundy*, 667 F.2d 1198, 1203 n. 9 (5th Cir. 1982).

Here, Plaintiff's complaint explicitly seeks punitive damages. Defendant has not argued at this juncture that there is insufficient evidence to support punitive damages in this case. Therefore, assuming that Plaintiff presents evidence sufficient to support that YKK acted with "reckless indifference" to Plaintiff's "federally protected rights," *see* 42 U.S.C. § 1981a(b)(1), then evidence of YKK's financial position, net worth, and wealth will be relevant and thus admissible. *Wilson*, 145 F.R.D. at 580 ("[T]his court concludes that in a suit involving a federal question where punitive damages are at issue, the financial condition of the defendant is relevant and will be admissible as a factor to be used in determining the amount of punitive damages, if any, to be awarded."). Accordingly, at this juncture, Defendant YKK's request to exclude evidence regarding its financial position is DENIED.

*Yarbrough v. YKK U.S.A. Inc.*, No. 1:20-cv-419-AT, 2022 U.S. Dist. LEXIS 254197, at *9 (N.D. Ga. Dec. 5, 2022). Thus, a blanket prohibition on the financial ability of Norfolk Southern's financial status is not warranted.

This 25th day of March, 2025.

Respectfully submitted,

*/s/Trent Shuping*
Trent Shuping
Georgia Bar No. 159083
*Attorney for Plaintiff*

**WARSHAUER WOODWARD ATKINS, LLC**

2740 Bert Adams Rd NW
Atlanta, GA 30339
404-892-4900
tss@warlawgroup.com

## CERTIFICATE OF SERVICE &
## COMPLIANCE WITH LOCAL RULE 5.1

I hereby certify that the foregoing document was prepared in Book Antiqua 14 Point Font as allowed by Local Rule 5.1 and further certify that I have this day served a copy of the within and foregoing upon all parties to this matter via the CM/ECF system.

This 25th day of March, 2025.

Respectfully submitted,

*/s/Trent Shuping*
Trent Shuping
Georgia Bar No. 159083
*Attorney for Plaintiff*